**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| Plaintiff, : | |
| vs. : | |
| : | |
| **WILLIAM G. MORTENSEN AND FENG ZHENG** : | Civil Action No. |
| : | |
| Defendants. : | |
| : | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges:

## SUMMARY

1.     From the second fiscal quarter 2008 through the first fiscal quarter 2009, Defendants William G. Mortensen, the former president and chief financial officer of Advanced Materials Group, Inc. ("AMG"), with the help of Defendant Feng Zheng a/k/a Eric Zheng, AMG's former accounting manager, materially inflated AMG's reported sales and accounts receivable.

2.     At Mortensen's direction, Zheng recorded false sales in AMG's accounting records, which materially misstated financial statements included in AMG's SEC filings. Mortensen and Zheng also provided false and misleading documents and information to AMG's auditor.

3.     Mortensen's apparent motive for the scheme was personal gain at the expense of AMG.  He used the false financial statement to enable AMG to draw down from its bank line of credit, and, of the borrowed funds, he spent nearly $380,000 on lavish personal expenditures that

he charged to a company credit card. Among other things, Mortensen used the company credit card to pay for extensive remodeling and landscaping of his home; private jets to Europe, Mexico and Florida for family vacations; a country club membership; and season tickets to professional hockey games. Of course, he did not disclose any of these expenditures to investors.

4.     The Commission, in the interest of protecting the public from such fraudulent activities, brings this civil securities law enforcement action seeking orders enjoining defendants from further violations of the antifraud, record-keeping, reporting, internal controls, and statements-to-accountants provisions of the federal securities laws, requiring disgorgement of ill-gotten gains, and awarding prejudgment interest and civil monetary penalties as allowed by law.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78aa]. Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Complaint.

6.     Venue lies in this Court under Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in the Northern District of Texas.

## DEFENDANTS

7.     Defendant William G. Mortensen resides in Plano, Texas. During the periods relevant to this case, Mortensen was employed as president and chief financial officer of AMG. AMG is a public company headquartered in Dallas and Garland, Texas whose common stock is registered with the Commission under Section 12(g) of the Exchange Act and, during the

relevant period, was quoted on the OTC Bulletin Board.  Prior to declaring bankruptcy in or around September 2009, AMG manufactured and sold foam and other flexible-material products for use in a number of industries.  AMG hired Mortensen in August 2005 and terminated him in June 2009.  Mortensen may be served with process as 5413 Blackhawk Drive, Plano, Texas 75093.

8.      Defendant Feng Zheng a/k/a Eric Zheng resides in Plano, Texas.  Zheng joined AMG as a staff accountant in June 2004 and was promoted to accounting manager in January 2006, a position he held until April 2009.  Zheng may be served with process at 3105 Ridge Hollow Drive, Plano, Texas 75023.

## FACTS

9.      From at least March 2008 through February 2009, Mortensen directed Zheng to record false sales to two of AMG's largest customers.  The false sales typically ranged from $90,000 to $200,000 or more.  At Mortensen's direction and with his knowledge, Zheng entered the sales into AMG's accounting system at the end of each month.  When the false sales were recorded, AMG's accounting system generated invoices to the customers.

10.     The fake invoices described the sales as "miscellaneous charges" and were unsupported by purchase orders or shipping documents.  To conceal the scheme, Mortensen directed Zheng to create credit memos reversing the sales before the invoices became delinquent.  Through this scheme, Mortensen and Zheng materially misstated AMG's publicly reported sales and earnings.   AMG's sales for the fiscal year ended November 30, 2008 were overstated by approximately $1.7 million, or 16.2%, which resulted in an earnings overstatement of 122.7%.  The scheme had a similar impact on AMG's quarterly results, as reflected in the following table:

| Quarter Ended | Net Sales as Originally Reported | Net Sales as Corrected | Earnings Originally Reported | Earnings as Corrected |
|---|---|---|---|---|
| May 31, 2008 | $2,791,466 | $2,246,966 | $30,502 | ($513,998) |
| August 31, 2008 | $3,216,863 | $2,615,697 | $120,573 | ($480,593) |
| February 28, 2009 | $2,689,190 | $2,522,590 | $27,738 | ($138,862) |

11.     AMG's accounts receivable were also materially overstated in these periods as a result of Defendants' scheme. At each balance sheet date between May 31, 2008 and February 28, 2009, AMG's receivables were overstated by 29.1%, 26.3%, 22.1% and 7.4%, respectively.

12.     The misstated financial statements were included in AMG's periodic public filings with the SEC on Forms 10-KSB, 10-QSB and 10-Q for these periods. Mortensen signed and certified these filings. In these certifications, Mortensen expressly represented, among other things, that:

(a)     he had reviewed the filing;

(b)     based on his knowledge, the filing did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by" the filing;

(c)     based on his knowledge, "the financial statements, and other financial information contained in [the filing], fairly present in all material respects the financial condition, results of operations and cash flows of" AMG for the periods in the filing; and

(d)     "[a]ny fraud, whether or not material, that involves management or other employees who have had a significant role in the registrant's internal control over financial reporting" was disclosed.

Because Mortensen knew about and directed the improper inflation of AMG's sales, earnings and accounts receivable, these representations were materially false and misleading when made.

13.     Mortensen and Zheng both knew that the fictitious sales had not occurred and, therefore, should not be recorded in AMG's accounting records.  They also both knew that the effect of recording these fictitious sales was to improperly inflate AMG's publicly reported sales, earnings and accounts receivable.

14.     Mortensen and Zheng's scheme was motivated, in part, by Mortensen's greed. AMG had a line of credit ("LOC") with a national bank.  The borrowing base of the LOC was directly linked to the level of AMG's total non-delinquent accounts receivable.  Accordingly, the greater AMG's non-delinquent accounts receivable balance, the more AMG could borrow under the LOC.

15.     At Mortensen's direction, Zheng prepared monthly reporting packages to the bank that included accounts receivable generated from the fictitious sales.  As a result, AMG was able to increase its borrowings under the credit line from approximately $1.5 million as of February 29, 2008 to more than $2.6 million by June 2009.

16.     Mortensen spent a substantial portion of the additional borrowings on purely personal expenses.  Since late 2005, Mortensen held a credit card in AMG's name.  Through Zheng, Mortensen caused AMG to pay the credit card balance each month.

17.     For 2008 through the first five months of 2009, Mortensen used the card to charge – and cause AMG to pay – personal expenditures totaling approximately $380,000.  The personal charges reached a one-month peak of $106,000 in March 2008, when Mortensen charged a country club membership ($34,000) and vacation travel on a private jet ($50,000) to the card.

18.     The misapplication of company funds by Mortensen began before he conspired with Zheng to cook AMG's books.  Previously, in 2006, Mortensen used the company card and caused AMG to pay for approximately $120,000 on such personal items as home remodeling, groceries and clothing.  His personal charges to the card during 2007 were even greater (nearly $190,000), including tens of thousands of dollars for extensive home remodeling, home and yard maintenance, personal property taxes, car leases and vacation travel.

19.     The sharp rise in Mortensen's personal expenditures in 2008, coupled with AMG's softening liquidity position, prompted Mortensen to increase credit line borrowings, which necessitated the falsification of the company's accounts receivable.

20.     In furtherance of their scheme, Mortensen and Zheng each provided false documents and information to AMG's outside auditor.  For instance, during one of her quarterly reviews during 2008, the auditor asked Zheng about a particular large sale that had been recorded at the end of the quarter.  The sale was one of the fictitious sales Zheng had recorded as part of his and Mortensen's fraudulent scheme.  Rather than tell the auditor the truth, however, Zheng told her that he had simply been too busy during the quarter to invoice the customer on a daily basis, so had rolled a number of sales to that customer into a single invoice.  Zheng knew this was untrue and that the sale had never occurred.

21.     Mortensen signed management representation letters to the auditor in connection with the fiscal 2008 audit and the reviews for the quarters ended May 31, 2008, August 31, 2008 and February 28, 2009.  These letters represented, among other things, that the financial statements had been prepared in accordance with generally accepted accounting principles and that there had been no fraud involving management or any personnel with responsibility for financial reporting.  These representations were false.

22.     Mortensen and Zheng each directly or indirectly falsified AMG's books and records by recording or directing the recording of the fictitious sales in AMG's general ledger and other financial records.  These actions were intentional.

23.     As AMG's CFO, Mortensen was responsible for establishing and maintaining the company's system of internal controls.  Mortensen failed to establish or maintain an effective system of internal controls over the following matters, among others:

(a)     AMG's accounting for sales and accounts receivable to ensure that all sales recorded in AMG's accounting records had actually occurred, and that sales and accounts receivable were reflected in AMG's financial statements in accordance with generally accepted accounting principles and company accounting policies;

(b)     AMG's borrowings under the LOC to assure that reporting packages made to the bank included only legitimate accounts receivable and not receivables resulting from fictitious sales; and

(c)     AMG's expenditures to assure that they were authorized and properly recorded, and that the company's cash and other assets were not wasted.

24.     To the extent AMG had an effective system of internal controls, Mortensen knowingly circumvented them by, among other things, causing Zheng to record the fictitious sales and by charging massive personal expenses to the secret credit card and causing AMG to pay those expenses.

## FIRST CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against Mortensen only)

25.     Paragraphs 1 through 24 are re-alleged and incorporated by reference.

26.     Mortensen, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

27.     In the purchase and sale of securities and as part of and in furtherance of his scheme to defraud, Mortensen, directly and indirectly, made false and misleading statements of material fact, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to directing Zheng to falsify AMG's sales, earnings and accounts receivable through the use of the fictitious sales, and by signing and certifying AMG's filings with the SEC on Form 10-K for the fiscal year ended November 30, 2008 and Forms 10-QSB and 10-Q for the fiscal quarters ended May 31, 2008, August 31, 2008 and February 28, 2009.

28.     Mortensen engaged in the conduct described in this claim knowingly or with severe recklessness regarding the truth.

29.     By reason of the foregoing, Mortensen has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5  [17 C.F.R. §§ 240.10b-5].

**SECOND CLAIM**
**Aiding and Abetting Mortensen's Violations of**
**Exchange Act Section 10(b) and Rule 10b-5**
**(Against Zheng only)**

30.     Paragraphs 1 through 24 are realleged and incorporated by reference.

31.     Defendant Zheng, in the manner set forth above, knowingly or with severe

recklessness provided substantial assistance to Defendant Mortensen in connection with his

violations of Section 10(b) and Rule 10b-5.

32.     By reason of the foregoing, Zheng aided and abetted Mortensen violations of, and

unless restrained and enjoined, will aid and abet further violations of Section 10(b) of the

Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5  [17 C.F.R. §§ 240.10b-5].

**THIRD CLAIM**
**Violations of Exchange Act**
**Section 13(b)(5) and Rules 13b2-1 and 13b2-2**
**(Against Both Defendants)**

33.     Paragraphs 1 through 24 are realleged and incorporated by reference.

34.     Defendants violated Section 13(b)(5) of the Exchange Act [15 U.S.C. §

78m(b)(5)] by knowingly circumventing or knowingly failing to implement a system of internal

accounting controls at AMG, or knowingly falsifying AMG's books, records or accounts.

Additionally, Defendants violated Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] by,

directly or indirectly, falsifying or causing to be falsified, the books, records or accounts of AMG

subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].  Furthermore,

Defendants violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] by making, or causing

to be made, materially false or misleading statements or omissions to an accountant or auditor.

35.     Unless enjoined, Defendants will continue to violate these provisions.

## FOURTH CLAIM
### Aiding and Abetting AMG's Violations of Exchange Act
### Section 13(a) and Rules 12b-20, 13a-1 and 13a-13
### (Against Both Defendants)

36.     Paragraphs 1 through 24 are realleged and incorporated by reference.

37.     Based on the conduct alleged herein, AMG violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

38.     Defendants, in the manner set forth above, knowingly or with severe recklessness provided substantial assistance to AMG, as an issuer of a security registered pursuant to Section 12 of the Exchange Act, in its failing to file with the Commission, in accordance with rules and regulations the Commission has prescribed, information and documents required by the Commission, and in failing to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act and annual reports and quarterly reports as the Commission has prescribed.

39.     By reason of the foregoing, Defendants aided and abetted AMG's violations of, and unless restrained and enjoined, will aid and abet further violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13].

## FIFTH CLAIM
### Aiding and Abetting AMG's Violations of Exchange Act
### Sections 13(b)(2)(A) and 13(b)(2)(B)
### (Against Both Defendants)

40.     Paragraphs 1 through 24 are realleged and incorporated by reference.

41.     Based on the conduct alleged herein, AMG violated Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

42.     Defendants, in the manner set forth above, knowingly or with severe recklessness provided substantial assistance to AMG in connection with its failure to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected AMG's transactions and dispositions of its assets.

43.     Defendants, in the manner set forth above, knowingly or with severe recklessness provided substantial assistance to AMG in connection with its failure to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

44.     By reason of the foregoing, Defendants aided and abetted AMG's violation of, and unless restrained and enjoined, will aid and abet further violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(A) and 78m(b)(2)(B)].

**SIXTH CLAIM**
**Violations of Rule 13a-14 of the Exchange Act**
**(Against Mortensen only)**

45.     Paragraphs 1 through 24 are re-alleged and incorporated by reference.

46.     Mortensen, in the manner set forth above, violated Rule 13a-14 of the Exchange Act by, directly or indirectly, certifying a periodic report containing financial statements filed by an issuer pursuant to Section 13(a) of the Exchange Act when he failed to:

(1)     review the report;

(2)     ensure, to the best of his knowledge, that the report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such

statements were made, not misleading with respect to the period covered by the report;

(3)      ensure, to the best of his knowledge, that the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in the report;

(4)      ensure that he had established and maintained disclosure controls and procedures, as defined in Exchange Act Rules 13a-15(e) and 15d-15(e), for the issuer and had: (i) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under his supervision, to ensure that material information relating to the issuer, including its consolidated subsidiaries, was made known to him by others within those entities, particularly during periods in which the periodic report is being prepared; (ii) evaluated the effectiveness of the issuer's disclosure controls and procedures and presented in this report his conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by the report based on such evaluation; and (iii) disclosed in the report any change in the issuer's internal control over financial reporting that occurred during the issuer's most recent fiscal quarter (the issuer's fourth quarter in the case of an annual report) that had materially affected, or was reasonably likely to materially affect, the issuer's internal control over financial reporting; and

(5)      ensure that he disclosed, based on his most recent evaluation of internal controls over financial reporting, to the issuer's board of directors (or persons

performing the equivalent functions): (i) all significant deficiencies and material

weaknesses in the design or operation of internal controls over financial reporting

which were reasonably likely to adversely affect the issuer's ability to record,

process, summarize and report financial information; and (ii) any fraud, whether

or not material, that involves management or other employees who had a

significant role in the issuer's internal controls over financial reporting.

47.     By reason of the foregoing, Mortensen has violated and, unless enjoined, will

continue to violate, Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

## RELIEF REQUESTED

For these reasons, the Commission respectfully requests that the Court enter a judgment:

(a)     permanently enjoining Mortensen from violating Sections 10(b) and 13(b)(5) of

the Exchange Act and Rules 10b-5, 13a-14, 13b2-1 and 13b2-2 thereunder, and from aiding and

abetting violations of Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) and Rules 12b-

20, 13a-1 and 13a-13 thereunder;

(b)     permanently enjoining Zheng from violating Section 13(b)(5) of the Exchange

Act and Rules 13b2-1 and 13b2-2 thereunder, and from aiding and abetting violations of

Exchange Act Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) and Rules 10b-5, 12b-20, 13a-

1 and 13a-13 thereunder;

(c)     ordering Mortensen to pay a civil penalty under Section 21(d) of the Exchange

Act [15 U.S.C. § 78u(d)];

(d)     ordering Zheng to pay a civil penalty of $25,000;

(e)     prohibiting Mortensen under Section 21(d)(2) of the Exchange Act [15 U.S.C.

§ 78u(d)(2)] from acting as an officer or director of any issuer that has a class of securities

registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file

reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

      (f)      granting such further relief as this Court may deem just and proper.

Dated:  June 9, 2010               Respectfully submitted,

                                *s/Jason C. Rodgers*

                                JASON C. RODGERS
                                Texas Bar No. 24005540
                                U.S. Securities and Exchange Commission
                                Burnett Plaza, Suite 1900
                                801 Cherry Street, Unit #18
                                Fort Worth, TX 76102-6882
                                (817) 978-1410
                                (817) 978-4927 (facsimile)
                                rodgersj@sec.gov

                                COUNSEL FOR PLAINTIFF SECURITIES AND
                                EXCHANGE COMMISSION